1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8
9  ROBERT EUGENE ALLEN,

10             Petitioner,                                3:07-cv-00449-LRH-WGC

11  vs.
                                                          **ORDER**
12  JAMES BENEDETTI, *et al.*,

13             Respondents.

14  _____/

15

16  Introduction

17         This action is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by Robert

18  Eugene Allen, a Nevada prisoner convicted of first degree murder with the use of a deadly weapon

19  and sentenced to two terms of life in prison with the possibility of parole.  The case is before the

20  court for resolution of procedural default issues, and on the merits of the claims in Allen's amended

21  petition.  The court will deny all the claims in the amended petition.  The court will grant Allen a

22  certificate of appealability with respect to one of Allen's claims (Ground 3).

23  Factual Background and Procedural History

24         In its January 9, 2007, order affirming Allen's conviction in sentence, the Nevada Supreme

25  Court summarized the facts of the case as follows:

26         The evidence showed that Allen believed that his wife [Laurel] was having an affair
           with another man.  On August 18, 2003, the night of the murder, Laurel received a
27         telephone call.  Suspicious, Allen checked the caller identification function on the
           telephone and recognized the number as being one that had been received several
28         times previously.  Later that evening, after eating dinner and after Laurel showered,

Allen applied lotion to her back for a skin condition she had.  Allen testified that as he applied the lotion, he thought about the telephone call and became increasingly upset. He testified that he snapped and struck Laurel in the head with an antique iron.  Allen further testified that he did not remember retrieving a knife from the kitchen and stabbing Laurel.  After the attack, Allen drove to a friend's house and told his friend that he hit Laurel with an iron, crushing her skull, and that he had stabbed her.

Laurel's autopsy revealed that she suffered multiple lacerations on her scalp and fractures of her skull.  Her most significant injury and the one that caused her death was a 4- to 5-inch-deep stab would that extended from her neck, across her jugular vein, and into her chest cavity, piercing her lung.

Order of Affirmance, Exhibit 38, pp. 1-2.[1]

Allen was charged in a criminal complaint with open murder with use of a deadly weapon (Exhibit 2), and a preliminary hearing was held on October 1, 2003.  *See* Transcript of Preliminary Hearing, Exhibit 4.  Following the preliminary hearing, Allen was held to answer the charge in the state district court, and on October 10, 2003, he was charged by information.  *See* Information, Exhibit 5.  On October 23, 2003, Allen pled not guilty.  *See* Transcript of Proceedings of October 23, 2003, Exhibit 6.

Following a jury trial, conducted between June 27 and July 1, 2005, Allen was convicted of first degree murder with the use of a deadly weapon, and he was sentenced to a term of life in prison with the possibility of parole, plus an equal and consecutive term on the deadly weapon enhancement.  *See* Transcript of Jury Trial, Exhibit 19, pp. 40-44 (jury's return of verdict); Verdict, Exhibit 21; Transcript of Sentencing Hearing, Exhibit 22; Judgment of Conviction, Exhibit 23.

Allen appealed.  *See* Notice of Appeal, Exhibit 24.  The Nevada Supreme Court affirmed the judgment of conviction on January 9, 2007.  *See* Order of Affirmance, Exhibit 38; Judgment, Exhibit 39.  The Nevada Supreme Court issued its remittitur on February 6, 2007.  Remittitur, Exhibit 41.

On September 26, 2007, Allen initiated this federal habeas corpus action by submitting a pro se habeas corpus petition (ECF No. 8).  The court initially denied Allen's motion for appointment of counsel (ECF Nos. 19, 20).  Allen then filed a pro se amended habeas petition (ECF No. 22).  Allen also filed a new motion for appointment of counsel; the court reconsidered the question of appointment of counsel and granted that motion, and appointed the federal public

---

[1]  The exhibits referenced in this order are those filed by Allen and located in the record at ECF No. 28, 29, 30, 31, and 40 (Exhibits 1 through 67).

1  defender (FPD) to represent Allen (ECF Nos. 21, 23, 25, 26). On February 2, 2009, counsel filed, on

2  Allen's behalf, a further amended habeas petition (ECF No. 27).[2] Then, on February 9, 2009,

3  counsel filed a stipulation (ECF No. 33), whereby the parties agreed to a stay of this action pending

4  Allen's exhaustion of claims in state court. The court approved that stipulation, and ordered the case

5  stayed on February 10, 2009 (ECF No. 35).

6         On March 6, 2009, Allen, acting pro se, filed a petition for writ of habeas corpus in the state

7  district court. Petition for Writ of Habeas Corpus, Exhibit 50. On April 8, 2009, the State filed a

8  motion to dismiss that action, contending it was untimely filed. State's Response and Motion to

9  Dismiss, Exhibit 52. Allen did not file a timely response to that motion to dismiss, but had included

10  in his state petition his excuse for his late filing: he asserted that there was good cause for the late

11  filing because he did not timely receive trial transcripts from the attorneys who had represented him

12  on his direct appeal. *See* Petition for Writ of Habeas Corpus, Exhibit 50, pp. 7-9. On May 21, 2009,

13  the state district court dismissed Allen's habeas petition as barred by the statute of limitations at

14  NRS 34.726(1). *See* Findings of Fact, Conclusions of Law, and Order, Exhibit 54; *see also*

15  Transcript of Proceedings of May 7, 2009, Exhibit 53.

16         On June 2, 2009, Allen, then represented by the FPD, filed a motion to reconsider the

17  dismissal of that action. *See* Memorandum of Points and Authorities in Support of Motion for

18  Reconsideration, Exhibit 55. On June 4, June 24, and July 8, 2009, the state district court held

19  hearings regarding the motion for reconsideration, and ultimately denied the motion. *See* Transcript

20  of Proceedings of June 4, 2009, Exhibit 57; Transcript of Proceedings of June 24, 2009, Exhibit 58;

21  Transcript of Proceedings of July 8, 2009, Exhibit 62.

22         While the motion for reconsideration was pending, Allen appealed. *See* Notice of Appeal,

23  Exhibit 59. Allen also filed, in the Nevada Supreme Court, an emergency motion for stay and for

24  order of remand. *See* Emergency Motion for Stay and Order Directing Remand, Exhibit 60. The

25  Nevada Supreme Court denied that motion. *See* Order Denying Motion, Exhibit 61.

26  _____

27       [2] The amended petition filed on Allen's behalf on February 2, 2009, is the operative petition in
     the case. Counsel entitled it a "first amended" petition, but that title is technically incorrect, as Allen
28   previously filed an amended petition on June 9, 2008 (ECF No. 22). At any rate, hereafter, in this order,
     the court refers to the February 2, 2009, amended petition (ECF No. 27) as Allen's "amended petition."

1    On September 10, 2010, the Nevada Supreme Court affirmed the state district court's ruling

2    that Allen's state habeas petition was time-barred, and also ruled that certain of his claims were

3    barred by NRS 34.810(1)(b), because they could have been raised on his direct appeal.  *See* Order of

4    Affirmance, Exhibit 67.

5    The stay of this federal habeas corpus action was lifted on August 9, 2011.  *See* Order entered

6    August 9, 2011 (ECF No. 39).

7    On October 4, 2011, respondents filed a motion to dismiss, arguing that Grounds 3, 4, 5, 6,

8    and 7 of Allen's amended habeas petition are barred by the doctrine of procedural default (ECF No.

9    42).  On September 13, 2012, the court denied respondents' motion to dismiss, without prejudice,

10   and directed the parties to file an answer and a reply addressing the merits of Allen's claims, and also

11   further addressing the procedural default issues.  *See* Order entered September 13, 2012 (ECF No.

12   49).

13   Respondents filed an answer (ECF No. 52) on November 16, 2012, and Allen filed a reply

14   (ECF No. 54) on February 14, 2013.

15   Analysis of Allen's Claims

16   Ground 1

17   In Ground 1 of his amended petition, Allen claims that he "is in custody in violation of his

18   right to due process under the Fifth and Fourteenth Amendments of the United States Constitution

19   because no rational jury could have concluded beyond a reasonable doubt that Allen was guilty of

20   first-degree murder."  Amended Petition, p. 3.

21   Allen raised this claim before the Nevada Supreme Court on his direct appeal (*see*

22   Appellant's Opening Brief, Exhibit 35, pp. 4-8), and the Nevada Supreme Court ruled as follows:

23       When reviewing for sufficiency of the evidence, "[t]he relevant inquiry for
         this Court is 'whether, after viewing the evidence in the light most favorable to the

24       prosecution, *any* rational trier of fact could have found the essential elements of the
         crime beyond a reasonable doubt.'"  [Footnote:  *Koza v. State*, 100 Nev. 245, 250,

25       681 P.2d 44, 47 (1984) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)
         (emphasis in original)).]  Here, Allen testified that the telephone call that precipitated

26       his attack on Laurel occurred two to three hours before the killing.  Further, during the
         attack he ceased beating Laurel with the iron, retrieved a knife from the kitchen,

27       returned to the bedroom, and stabbed her in the neck, delivering the fatal wound.

28       A conviction for first-degree murder requires proof beyond a reasonable doubt

4

1

2

3

4

5

6

that the killing was willful, *i.e.*, with the intent to kill, deliberate, and premeditated. [Footnote:  NRS 200.030; *Byford v. State*, 116 Nev. 215, 234, 994 P.2d 700, 713 (2000).]  Deliberation connotes "a dispassionate weighing process and consideration of consequences before acting."  [Footnote:  *Byford*, 116 Nev. at 235, 994 P.2d at 714.]  Premeditation "is a design, a determination to kill, distinctly formed in the mind."  [Footnote:  *Id*. at 237, 994 P.2d at 714.]  We conclude that the jury could have found that the killing was willful, deliberate, and premeditated from the evidence showing that Allen beat his wife several hours after she received the telephone call he claims enraged him and that he ceased the beating long enough to retrieve a knife from the kitchen and inflict the fatal wound.  Therefore, we conclude that the evidence sufficiently supports the jury's finding of first-degree murder.

7  Order of Affirmance, Exhibit 38, pp. 2-3.

8      28 U.S.C. § 2254(d) provides the standard of review applicable to this claim under the

9  Antiterrorism and Effective Death Penalty Act (AEDPA):

10

11

12

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

13

14

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

15

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

16  28 U.S.C. § 2254(d).

17      A state court decision is contrary to clearly established Supreme Court precedent, within the

18  meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set

19  forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

20  indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

21  different from [the Supreme Court's] precedent."  *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)

22  (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694

23  (2002)).

24      A state court decision is an unreasonable application of clearly established Supreme Court

25  precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

26  governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

27  principle to the facts of the prisoner's case."  *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at

28  413).  The "unreasonable application" clause requires the state court decision to be more than

1   incorrect or erroneous; the state court's application of clearly established law must be objectively

2   unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

3        The Supreme Court has further instructed that "[a] state court's determination that a claim

4   lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

5   correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citing

6   *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has also emphasized "that

7   even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."

8   *Id*. (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 131 S.Ct.1388, 1398 (2011)

9   (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating

10  state-court rulings, which demands that state-court decisions be given the benefit of the doubt"

11  (internal quotation marks and citations omitted)).

12       The analysis under section 2254(d) looks to the law that was clearly established by United

13  States Supreme Court precedent at the time of the state court's decision. *Wiggins v. Smith*, 539 U.S.

14  510, 520 (2003).

15       The United States Supreme Court case of *Jackson v. Virginia*, 443 U.S. 307 (1979), sets forth

16  the test governing a claim that there was insufficient evidence to support a conviction.  In *Jackson*,

17  the Supreme Court held, "the relevant question is whether, after viewing the evidence in the light

18  most favorable to the prosecution, *any* rational trier of fact could have found the essential elements

19  of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

20       This court agrees with the ruling of the Nevada Supreme Court.  There was ample evidence

21  upon which rational jurors could have found Allen's killing of Laurel to be willful, deliberate, and

22  premeditated, including:  the number and nature of the wounds Allen inflicted upon Laurel (*see*

23  Testimony of Dr. Gary Telgenhoff,  Exhibit 17, pp. 4-20; Autopsy Report, Exhibit 44); the evidence

24  that their marital problems -- including Allen's suspicions that Laurel was having an affair -- had

25  been going on for at least six months before Allen killed her (*see* Testimony of Herbert Brown,

26  Exhibit 17, pp. 99-100, 103-04, 114; Testimony of Melvin Grant, Exhibit 18, pp. 31-33, 40;

27  Testimony of Robert Eugene Allen, Exhibit 18, pp. 49-53, 56; Allen's Statement to Police, Exhibit

28  47, pp. 2-3); the evidence that there had been, before the night of the killing, many telephone calls

1   that Allen found to be suspicious (*see* Testimony of Herbert Brown, Exhibit 17, p. 96; Testimony of

2   Robert Eugene Allen, Exhibit 18, pp. 82-83); the evidence that significant time -- at least two to two

3   and a half hours -- passed between the telephone call and the killing (*see* Testimony of Robert

4   Eugene Allen, Exhibit 18, pp. 64-66, 83-84); the evidence that the police found, at the scene, a

5   kitchen drawer open, with blood drops in it, and blood drops on the floor beneath it, suggesting that,

6   after Allen beat Laurel with the antique iron, he went to the kitchen to get a knife to use to deliver

7   the fatal blow (*see* Testimony of Stephanie Fox, Exhibit 18, p. 13); and the detailed description of

8   the killing that Allen gave to Herbert Brown (*see* Testimony of Herbert Brown, Exhibit 17, p. 102;

9   Testimony of Robert Eugene Allen, Exhibit 18, p. 87).

10          The Nevada Supreme Court's determination that there was sufficient evidence that the killing

11   in this case was willful, deliberate, and premeditated, was neither contrary to, nor an unreasonable

12   application of, clearly established federal law, and was not based on an unreasonable determination

13   of the facts in light of the evidence.  *See* 28 U.S.C. § 2254(d).

14          <u>Ground 2</u>

15          In Ground 2, Allen claims that he "is in custody in violation of his right to due process and a

16   fair trial under the Fifth, Sixth, and Fourteenth Amendments because the State was allowed to admit

17   irrelevant and highly prejudicial evidence about a prior domestic assault."  Amended Petition, p. 5

18          Allen raised this claim on his direct appeal.  *See* Appellant's Opening Brief, Exhibit 35,

19   pp. 8-13.  The Nevada Supreme Court ruled as follows:

20                  Allen next argues that the district court erred in admitting prior bad act
        evidence.  Although such evidence is generally inadmissible, it may be introduced to

21      show, for example, "motive, opportunity, intent, preparation, plan, knowledge,
        identity, or absence of mistake or accident."  [Footnote:  NRS 48.045(2).]  Prior to

22      admitting prior bad act evidence, the district court must conduct a *Petrocelli*
        [footnote:  *Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985)] hearing to establish

23      whether "(1) the [prior bad act] is relevant to the crime charged; (2) the act is proven
        by clear and convincing evidence; and (3) the probative value of the evidence is not

24      substantially outweighed by the danger of unfair prejudice."  [Footnote: *Rosky v.
        State*, 121 Nev. 184, 195, 111 P.3d 690, 697 (2005) (quoting *Tinch v. State*, 113 Nev.

25      1170, 1176, 946 P.2d 1061, 1064-65 (1997)).]

26                  Here, the district court held a *Petrocelli* hearing to determine the admissibility
        of evidence of a domestic violence incident between Allen and Laurel that occurred

27      several weeks before the murder.  The evidence presented at the hearing revealed that
        on June 27, 2003, Laurel's son, Aaron Dahl, heard banging noises emanating from

28      Laurel and Allen's bedroom.  Dahl heard his mother repeatedly scream, "Help me."

1   Dahl dialed 9-1-1 and then successfully gained entry into the locked bedroom.  He
    observed Laurel sitting on the floor in the corner of the bedroom.  Allen exited the
2   bedroom and waited outside for the police to arrive.  Henderson Police Officer
    Mitchell Wilson testified that when he arrived, Laurel was crying, "visibly afraid,"
3   and shaking.  He stated that Laurel told him that earlier in the evening she and Allen
    had discussed their marital problems, including his suspicion that she was having an
4   affair.  Allen became upset, and as she got out of bed, Allen grabbed her wrist and
    pulled her back on the bed.  Laurel screamed for help, and Allen let go of her,
5   grabbed a three-inch buck knife, and threatened to kill himself.  Officer Wilson stated
    that Laurel told him that she attempted to exit the bedroom but Allen grabbed her and,
6   for a short time, prevented her from leaving.  Officer Wilson testified that he
    observed physical injuries to Laurel's wrist and arms.  He further stated that he issued
7   Allen a citation for domestic battery.

8           After considering the evidence presented, the district court concluded that the
    incident on June 27 was relevant to demonstrate ill will and motive, that it was
9   proven by clear and convincing evidence, and that its probative value exceeded any
    prejudice.  We will not reverse on appeal a district court's decision to admit or
10  exclude prior bad act evidence absent manifest error.  [Footnote: *Id.*]  Allen's defense
    at trial was that after Laurel received a suspicious telephone call, he became enraged
11  by the thought of her having an affair and killed her.  The evidence shows that the
    physical altercation on June 27 also erupted as a result of marital discord because
12  Allen suspected Laurel of being unfaithful.  We conclude that the prior bad act was
    relevant to show Allen's motivation for killing Laurel and satisfied the other *Tinch*
13  factors necessary for its admission.  Therefore, we conclude that the district court did
    not err in admitting this evidence.

14

15  Order of Affirmance, Exhibit 38, pp. 3-5.

16          Allen cites no controlling United States Supreme Court precedent, in support of this claim,

17  and he makes no assertion that the Nevada Supreme Court's ruling was contrary to any such

18  precedent.  *See* Amended Petition, pp. 5-7; Reply (ECF No. 54), pp. 8-9.  In fact, Allen recognizes

19  that in *Alberni v. McDaniel*, 458 F.3d 860 (9th Cir.2006), the court of appeals stated that "the

20  Supreme Court has not 'clearly established' the principle that 'introduction of propensity evidence

21  may violate due process' for purposes of habeas review," and Allen states that he "would

22  respectfully present the claim to preserve it for further review."  Reply, p. 9, citing *Albierni*, 458 F.3d

23  at 864-67.

24          Given the standard of review applicable to this claim under 28 U.S.C. § 2254(d), and given

25  the dearth of United States Supreme Court precedent supporting this claim, the court finds Ground 2

26  to be meritless.  As the Supreme Court has never squarely addressed the issue raised in Ground 2

27  (*see Alberni*, 458 F.3d at 864-67), the state supreme court's rejection of this claim was not contrary

28  to, and did not involve an unreasonable application of, clearly established Supreme Court precedent.

1    *See* 28 U.S.C. § 2254(d).

2        Ground 3

3        In Ground 3 of his amended habeas petition, Allen claims that "[d]uring voir dire, the

4    prosecutor struck a black juror because of her race," and "[a]s a result, Mr. Allen is imprisoned in

5    violation of his right to equal protection under the Fourteenth Amendment of the United States

6    Constitution."  Amended Petition, p. 8.

7        The Nevada Supreme Court held this claim to be procedurally barred, because Allen's state

8    habeas petition was filed outside the applicable one-year limitations period, and, also, because the

9    claim was not raised on Allen's direct appeal.  *See* Order of Affirmance, Exhibit 67.  Respondents

10   contend that this claim is, therefore, barred in this federal habeas corpus action by the procedural

11   default doctrine.  *See* Answer, pp. 7-11; *see also* Motion to Dismiss (ECF No. 42), pp. 4-6.

12       In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court held that a state

13   prisoner's failure to comply with the state's procedural requirements in presenting his claims is

14   barred from obtaining a writ of habeas corpus in federal court by the adequate and independent state

15   ground doctrine.  *Coleman*, 501 U.S. at 731-32 ("Just as in those cases in which a state prisoner fails

16   to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural

17   requirements for presenting his federal claims has deprived the state courts of an opportunity to

18   address those claims in the first instance").  Where such a procedural default constitutes an adequate

19   and independent state ground for the denial of habeas corpus relief, the default may be excused only

20   if "a constitutional violation has probably resulted in the conviction of one who is actually innocent,"

21   or if the prisoner demonstrates cause for the default and prejudice resulting from it.  *Murray v.

22   Carrier*, 477 U.S. 478, 496 (1986).

23       A state procedural bar is "adequate" if it is "clear, consistently applied, and well-established

24   at the time of the petitioner's purported default."  *Calderon v. United States Dist. Court*, 96 F.3d

25   1126, 1129 (9th Cir.1996) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir.1994)).  A state

26   procedural bar is "independent" if the state court "explicitly invokes the procedural rule as a separate

27   basis for its decision."  *Vang v. Nevada*, 329 F.3d 1069, 1074 (9th Cir.2003).

28   ///

9

1    To demonstrate cause for a procedural default, the petitioner must "show that some objective

2    factor external to the defense impeded" his efforts to comply with the state procedural rule.  *Murray*,

3    477 U.S. at 488.  For cause to exist, the external impediment must have prevented the petitioner

4    from raising the claim.  *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  With respect to the

5    prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained

6    of] constituted a possibility of prejudice, but that they worked to his actual and substantial

7    disadvantage, infecting his entire [proceeding] with errors of constitutional dimension."  *White v.*

8    *Lewis*, 874 F.2d 599, 603 (9th Cir.1989), citing *United States v. Frady*, 456 U.S. 152, 170 (1982).

9    Responding to the respondents' procedural default defense, Allen argues that he can show

10   cause for the procedural default:  he claims that he was unable to raise this claim within Nevada's

11   one-year limitations period because of his former counsel's failure to provide him the files necessary

12   to raise the claim, in spite of his persistent and repeated requests for the files.  *See* Opposition to

13   Motion to Dismiss (ECF No. 47), pp. 8-17.  Allen also argues that, because of the manner in which

14   the state procedural rules were applied in his case, those rules were not adequate to support a

15   procedural default.  *Id*. at 10-12, 14-16.

16   The court finds that, even assuming for purposes of analysis that Allen can show cause for

17   his procedural default of this claim, he does not show prejudice.  And, similarly, even if it is

18   assumed that the state procedural rules, as applied in this case by the state courts,  were inadequate to

19   support application of the procedural default doctrine, Allen is not entitled to relief on this claim.  In

20   short, the court finds that habeas corpus relief is not warranted with respect to Ground 3.

21   The AEDPA standard does not apply where the state supreme court rejected a federal claim

22   on procedural grounds and did not reach its merits.  *Harrington*, 131 S.Ct. at 784-85.  In such a case,

23   the federal habeas court reviews the claim de novo.  *Chaker v. Crogan*, 428 F.3d 1215, 1221 (9th

24   Cir.2005) (applying de novo standard of review to a claim in a habeas petition that was not

25   adjudicated on the merits by the state court); *Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir.2004)

26   (same).  That is the case here; the Nevada Supreme Court has not ruled on the claim that is Ground 3

27   of Allen's federal habeas petition.  This court, then, considers that claim de novo.

28   ///

1    In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that the use of race-based

2  peremptory challenges to excuse prospective jurors runs afoul of the Equal Protection Clause of the

3  Fourteenth Amendment. *Batson*, 476 U.S. at 89.  Courts are to evaluate *Batson* claims using a

4  three-part test. *Kesser v. Cambra*, 465 F.3d 351, 359 (9th Cir.2006) (en banc).  "First, the defendant

5  must make a prima facie showing that a challenge was based on race.  Second, the prosecution must

6  offer a race-neutral basis for the challenge. Third, the court must determine whether the defendant

7  has shown 'purposeful discrimination.'"  *Id*. (quoting *Batson*, 476 U.S. at 98).  The "ultimate burden

8  of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the

9  strike." *Purkett v. Elem*, 514 U.S. 765, 768 (1995).

10    Allen is a black man; his wife, whom he killed, was a white woman. *See* Amended Petition,

11  p. 8.  During voir dire, the prosecution used a peremptory challenge to strike a black juror. *See*

12  Transcript of Jury Trial, Exhibit 16, pp. 45-52, 69.  After the defense objected, the prosecutor stated:

13         Judge, the race-neutral reason is simply her background as a teacher.  My
      experience in past jury trials is, I don't have good experiences with people with a
14       teaching background, for whatever reason.

15         It's just instinct, it's hunch.  It had nothing to do with her race.  There's other
      African-American people on this jury.  I certainly had no intent to exclude anyone
16       based on race.

17  *Id*. at 154.

18    Allen argues that the prosecutor's explanation, that he challenged the juror because of her

19  teaching background, was irrational and was a pretext for purposeful discrimination, but he proffers

20  little evidence in support of that argument. *See* Reply, pp. 9-17.  The court concludes that Allen has

21  not met his burden under the third part of the *Batson* analysis.  Allen points out that there were four

22  other potential jurors who had teaching backgrounds, and that the prosecution did not use

23  peremptory challenges to strike any of them, but, upon closer inspection, that does not amount to

24  substantial evidence of purposeful discrimination: three of those potential jurors were challenged by

25  the defense, and did not make it onto the jury, and the fourth was not currently teaching, but was

26  employed in a "home outreach program." *See* Reply, p. 16.  Allen does not proffer any evidence that

27  could establish that the prosecution's peremptory challenge was based on purposeful racial

28  discrimination.

11

1    The court will deny habeas corpus relief with respect to Ground 3.

2        Ground 4

3        In Ground 4, Allen claims that "[a] jail employee informed the entire panel at the outset of

4    voir dire that Allen was incarcerated, that he had received information about the case from Allen,

5    and that he could not be an impartial juror for those reasons," and "[a]s a result, Mr. Allen was

6    deprived of his right to a fair trial and an impartial jury under the Fifth, Sixth, and Fourteenth

7    Amendments of the United States Constitution."  Amended Petition, p. 9.

8        Here again, the Nevada Supreme Court held this claim to be procedurally barred in state

9    court, because Allen's state habeas petition was filed outside the applicable limitations period, and

10   also because the claim was not raised on Allen's direct appeal.  *See* Order of Affirmance, Exhibit 67.

11   Respondents contend, therefore, that this claim is barred by the procedural default doctrine.  *See*

12   Answer, pp. 7-11; *see also* Motion to Dismiss (ECF No. 42), pp. 4-6.  Allen argues, in response, that

13   he can show cause for the procedural default, in that he was unable to raise this claim within

14   Nevada's one-year limitations period because of his former counsel's failure to provide him files

15   necessary to raise the claim, in spite of his persistent and repeated requests for the files.  *See*

16   Opposition to Motion to Dismiss, pp. 8-17.  Allen also argues that, because of the way the state

17   procedural rules were applied in his case, those rules were not adequate, such that they could support

18   a procedural default.  *Id.* at 10-12, 14-16.  Here again, the court assumes for purposes of analysis that

19   Allen can show cause for his procedural default, but finds that he cannot show prejudice with respect

20   to this claim.  And, even if it is assumed that the state procedural rules were inadequate, as applied in

21   this case, Allen is not entitled to relief on this claim.  The court finds the claim in

22   Ground 4 to be without merit.

23       As the Nevada Supreme Court has not ruled on the claim in Ground 4, this court considers

24   the claim de novo.  *See Chaker*, 428 F.3d at 1221; *Lewis*, 391 F.3d at 996.

25       Ground 4 is based on the following exchange between the judge and a potential juror, which

26   took place in the presence of the other potential jurors during jury voir dire:

27           Prospective Juror Molnar:     I work in the Clark County Detention Center
             and I know the defendant.
28

12

1     The Court:  And your name is what?

2     Prospective Juror Molnar:  Mr. Molnar, 19-0176, on daily basis.

3     The Court:  But had you heard anything particular about this case before
today, any particulars?

4

5     Prospective Juror Molnar:  Just from him and the other people in the
modules.

6     The Court:  All right.  But no newspaper, radio or TV?

7     Prospective Juror Molnar:  No, sir.  And I know a number of people on the
list just from working down in booking.  I know the officers.

8     The Court:  Well, do you think you can objectively evaluate all this?

9     Prospective Juror Molnar:  No, I don't think so.

10     The Court:  Frankly, I'm a little surprised they assigned you to a criminal

11 trial.

12     Prospective Juror Molnar:  I am too, sir.  And I know you too, sir.

13     The Court:  Would counsel stipulate to having him reassigned to a civil
matter?

14     Mr. Waters [prosecutor]:  Yes, Your Honor.

15     The Court:  Because this has got to be a little trying on you.  Well, aside

16 from that.

17     Why don't you go downstairs and ask them to assign you to another case.

18 *See* Transcript of Jury Trial, Exhibit 15, pp. 19-20.

19   Allen claims that this exchange, before the other prospective jurors, "caused unfair and

20 irreversible prejudice to Mr. Allen."  Amended Petition, p. 10.  Allen argues: "The jury was

21 informed that Allen had [been] incarcerated, an irrelevant fact that unfairly suggested to the jury that

22 Allen was dangerous."  *Id*.  Allen also argues:

23   Molnar further stated that he had received information about the case from other
   people in the jail, and from Mr. Allen himself.  As a result of this knowledge,

24   Mr. Molnar stated that he could not be an impartial juror.  The jury panel, thus, was
   left to speculate about damaging information Mr. Allen and others had provided to

25   Molnar that made him unable to serve as a juror at his trial.

26 *Id*. ( citation to trial transcript omitted).

27   Allen's trial counsel raised this issue during the voir dire, and asked that a new panel of

28 prospective jurors be selected.  *See* Transcript of Jury Trial, Exhibit 16, pp. 3-4.   The trial court

1   denied that request, stating:

2      The Court:      Well, as to Officer Molnar's reference to his knowledge of the
       defendant, it occurred to me at the time that it was pretty much neutral.

3                                        *     *     *

4   He just indicated that he knew the defendant and he couldn't be objective or unbiased,
5   I think he said.

6      To my way of thinking it cuts both ways, really.  There was nothing critical
       that I sensed of Officer Molnar's opinion of the defendant.  He just said he knew him
7      and he talked to him and, of course, he went into this thing about knowing him at the
       jail which, undoubtedly, that is a fact which the jury is aware of, which is not my
8      preference, certainly.

9      I would say, however, two things on that issue.  First of all, I think most
       people on the street, the jury including, would presume that someone charged with
10     murder would not be out running around loose.

11     And, secondly, I think the major concern that jurors not be aware that
       someone is in custody is not so much the fact alone that they're in custody.  I think
12     the genesis of that was some years back when people were drug over from the jail in
       their jail garb, and there was a dehumanizing effect of them being prisoners wedged
13     in between these attorneys, and kind of an object rather than a human being.

14     I think it's more the specter of seeing someone in jail garb, than the
       knowledge that the person is perhaps in jail.

15     So on balance I don't see that there's been any real damage done, although
16     there is a matter of concern.

17  *See* Transcript of Jury Trial, Exhibit 16, pp. 5-7.

18      This court finds that the exchange between the judge and prospective juror, before the other

19  prospective jurors, was not such that it would bias the other prospective jurors, or render Allen's trial

20  unfair.

21      The exchange did suggest that, after he killed Laurel, Allen had been in custody at the jail, at

22  least at some point, and at least for some amount of time.  However, the fact that Allen was in

23  custody was no secret; that fact would eventually become plain to the jury, as a result of the

24  testimony of various witnesses.  *See* Testimony of Officer David Schumer, Exhibit 17, pp. 23-26;

25  Testimony of Officer Richard Huber, Exhibit 17, pp. 32-34; Testimony of Officer Mitchell Wilson,

26  Exhibit 17, pp. 77-78; Testimony of Detective John Williams, Exhibit 17, pp. 118-20.  In light of the

27  testimony indicating that Allen was taken into custody following Laurel's murder, Allen's trial was

28  not rendered unfair by the vague indication, by prospective juror Molnar, that Allen had at some

14

1   point, for some unspecified amount of time, been at the county jail.

2          As for the other part of Allen's argument -- that prospective juror Molnar suggested to the

3   other prospective jurors  that he had some prejudicial information regarding Allen -- the court finds

4   that there was no information conveyed that could possibly have rendered Allen's trial unfair.

5   Certainly, there were no particular prejudicial facts about Allen conveyed to the other prospective

6   jurors.  And, prospective juror Molnar's statement that he could not objectively evaluate the

7   evidence appeared, in context, to be based more upon his general status as a law enforcement officer

8   than upon any particular information he knew about Allen or about Laurel's murder.

9          Considering the entire exchange between the trial judge and prospective juror Molnar, in

10  light of all the evidence presented at the trial, the claim in Ground 4 fails; that exchange did not

11  render the jury biased, and it did not render Allen's trial unfair.

12          Ground 5

13          In Ground 5, Allen claims that the trial court "abused its discretion when it read the jury the

14  flight instruction when there was no evidence that Allen intended to flee for the purpose of avoiding

15  arrest and where he turned himself [in to] the police hours after the incident," and "[t]he trial court's

16  error deprived Allen of his right to a fair trial guaranteed by the Fifth, Sixth and Fourteenth

17  Amendments."  Amended Petition, pp. 10, 11.

18          As with the claims in Grounds 3 and 4, the Nevada Supreme Court held this claim to be

19  procedurally barred in state court, because Allen's state habeas petition was filed outside the

20  applicable one-year limitations period, and, also, because the claim was not raised on Allen's direct

21  appeal.  *See* Order of Affirmance, Exhibit 67.  Respondents contend, therefore, that this claim is

22  barred by the procedural default doctrine.  *See* Answer, pp. 7-11; *see also* Motion to Dismiss (ECF

23  No. 42), pp. 4-6.  And, here again, Allen argues that he can show cause for the procedural default, in

24  that he was unable to raise this claim within Nevada's one-year limitations period because of his

25  former counsel's failure to provide him files necessary to raise the claim, in spite of his persistent

26  and repeated requests for the files.  *See* Opposition to Motion to Dismiss, pp. 8-17.  Allen also

27  argues, here too, that, because of the way the state procedural rules were applied in his case, those

28  rules were not adequate, such that they could support a procedural default.  *Id*. at 10-12, 14-16.  As

with the claims in Grounds 3 and 4, the court assumes for purposes of analysis that Allen can show

cause for his procedural default of Ground 5, but finds that he cannot show prejudice with respect to

this claim.  And, even if it is assumed that the state procedural rules were inadequate, as enforced in

this case by the state courts, Allen is not entitled to relief on this claim.  The court finds the claim in

Ground 5 to be without merit.

As the Nevada Supreme Court has not ruled on the claim in Ground, this court considers the

claim de novo.  *See Chaker*, 428 F.3d at 1221; *Lewis*, 391 F.3d at 996.

The jury instruction that Allen challenges was as follows:

> The flight of a person immediately after the commission of a crime, or after he
> is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact
> which, if proved, may be considered by you in light of all other proved facts in
> deciding the question of his guilt or innocence.  Whether or not evidence of flight
> shows a consciousness of guilt and the significance to be attached to such a
> circumstance are matters for your deliberation.

Jury Instructions, Exhibit 20, Instruction No. 23.

Allen objected to this instruction at trial, arguing that it was not supported by the evidence.

*See* Transcript of Proceedings of August 17, 2005, Exhibit 22, p. 4.  The trial court disagreed, ruling

as follows:

> The Court:     Well, I thought the instruction did follow the State's theory of
> the case and particularly that particular element of it.
>
> It was left to the jury to believe or disbelieve whether there was a conscious
> flight from authorities.
>
> I thought there was sufficient evidence to warrant the reading of the
> instruction.  That's why it was given.

*Id*. at 5.

In his closing argument, the prosecutor presented argument based on the flight instruction, as

follows:

> There is an instruction on flight, and it's Instruction No. 23.  And you can
> consider it's not proof in itself of a defendant's guilt, but you can consider it in
> making your determination of guilt of the defendant.
>
> If someone flees from the scene of a crime and does not stick around for the
> police to arrive, you can take that into consideration.  In this case the defendant after
> killing his wife left the residence, left her lying there in a pool of blood.  He didn't

16

1    call for medical help, he didn't call the police.  He left.

2        Once he left he contemplated suicide.  He went to his friend's house.  He
3    didn't go to the police on his own.  His friend kept him there at the house, washed his
     clothes, prevented him from leaving so that he couldn't kill himself, and then
4    eventually talked him into and drove him to the police station.  That's how they ended
     up down there.  So you can consider the fact that he fled the crime scene in your
5    deliberations.

6    Transcript of Jury Trial, Exhibit 18, pp. 101-02.  And, defense counsel responded as follows, in his

7    closing argument:

8        Use your common sense.  There was no effort to escape in this case as the
     Prosecutor suggests.  I mean, what is it about the word "escape" that I don't
9    understand?  When somebody goes down to the police station, the jail, and he's not
     even a suspect and he says here I am, is that what we call escape?  Tell me what I'm
10   missing in my understanding of the word, "escape."

11   Transcript of Jury Trial, Exhibit 19, p. 20.

12       To the extent that Allen contends that the jury instruction violated his federal constitutional

13   right to due process of law, he must demonstrate that "the ailing instruction by itself so infected the

14   entire trial that the resulting conviction violates due process."  *Estelle v. McGuire*, 502 U.S. 62, 72

15   (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  The instruction must be considered in

16   the context of the trial record and the instructions as a whole.  *Id.*; *see also  Middleton v. McNeil*, 541

17   U.S. 433, 437-38 (2004).  It is not sufficient to show that "the instruction is undesirable, erroneous,

18   or even 'universally condemned.'"  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp*,

19   414 U.S. at 154).

20       Here, there is no showing that it was error for the trial court to give the flight instruction,

21   much less that doing so infected Allen's entire trial, and rendered it unfair.

22       After he killed Laurel, Allen immediately left the scene of the murder.  *See* Testimony of

23   Robert Eugene Allen, Exhibit 18, p. 66 ("I remember hitting her, and then the next thing I know I

24   walked out the front door and I get in the car.").  Allen did not summon medical help for Laurel, and

25   he did not call the police.  *See* Testimony of Robert Eugene Allen, Exhibit 18, pp. 85-86.  Instead,

26   Allen went to the home of his friend, Herbert Brown, where he stayed for about two to two and a

27   half hours.  *See* Testimony of Herbert Brown, Exhibit 17, pp. 93-99; Testimony of Robert Eugene

28   Allen, Exhibit 18, pp. 86-87.  Allen expressed to Brown that he wanted to leave -- that he "wanted to

go out into the desert by himself and commit suicide" -- but Brown convinced him to stay. Testimony of Herbert Brown, Exhibit 17, pp. 98-99, 109-10 (... "I wouldn't let him leave").  Then, at the urging of Brown, Allen went with Brown to the Las Vegas police station and turned himself in. *See* Testimony of Herbert Brown, Exhibit 17, pp. 99, 109-10; Testimony of Robert Eugene Allen, Exhibit 18, p. 68.  This sequence of events could reasonably have been construed by the jury as flight by Allen from the scene of the crime.  The jury instruction was properly given, and the parties properly argued the matter in their closing arguments.  Ground 5 is without merit.

> Ground 6

In Ground 6, Allen claims that he "is in custody in violation of his right to effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution."  Amended Petition, p. 11.  Ground 6 includes three subclaims, which may be designated Grounds 6A, 6B, and 6C.  In Ground 6A, Allen claims that his trial counsel "failed to object to the crime scene and autopsy photographs."  *Id*. at 12.   In Ground 6B, Allen claims that his trial counsel "failed to properly present Allen's theory of defense."  *Id*. at 13.  In Ground 6C, Allen claims that his trial counsel "failed to object to prosecutorial misconduct during closing argument."  *Id*. at 15.

The Nevada Supreme Court held these claims of ineffective assistance of counsel to be procedurally barred in state court, because Allen's state habeas petition was filed outside the applicable limitations period.  *See* Order of Affirmance, Exhibit 67.  Respondents contend, therefore, that these claims are barred by the procedural default doctrine.  *See* Answer, pp. 7-11; *see also* Motion to Dismiss (ECF No. 42), pp. 4-6.  In turn, Allen argues that he can show cause for the procedural default, in that he was unable to raise this claim within Nevada's one-year limitations period because of his former counsel's failure to provide him files necessary to raise the claim, in spite of his persistent and repeated requests for the files.  *See* Opposition to Motion to Dismiss, pp. 8-17.  Allen also argues that, because of the way that the state-law statute of limitations was applied in his case, it was not adequate, such that it could support a procedural default.  *Id*. at 10-12, 14-15 Here again, the court assumes for purposes of analysis that Allen can show cause for his procedural default, but finds that he cannot show prejudice with respect to these claims.  And, even if it is

1   assumed that the state-law statute of limitations was inadequate, as applied in this case, Allen is not

2   entitled to relief on the claims in Ground 6.  The court finds those claims to be without merit.

3        As the Nevada Supreme Court has not ruled on the claims in Ground 6 of Allen's federal

4   habeas petition, this court considers the claims de novo.  *See Chaker*, 428 F.3d at 1221; *Lewis*, 391

5   F.3d at 996.

6              Ground 6A

7        In Ground 6A, Allen claims that his trial counsel "failed to object to the crime scene and

8   autopsy photographs."  Amended Petition, p. 12.

9        In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two

10  prong test for analysis of claims of ineffective assistance of counsel:  a petitioner claiming

11  ineffective assistance of counsel must demonstrate (1) that his attorney's representation "fell below

12  an objective standard of reasonableness," and (2) that the attorney's deficient performance

13  prejudiced the defendant such that "there is a reasonable probability that, but for counsel's

14  unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S.

15  at 688; *see also id*. at 694.  "A reasonable probability is a probability sufficient to undermine

16  confidence in the outcome."  *Id*. at 694.  The inquiry under *Strickland* is highly deferential, and

17  "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the

18  circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

19  perspective at the time."  *Id*. at 689.  Thus, to satisfy Strickland's first prong, deficient performance, a

20  defendant must overcome "the presumption that, under the circumstances, the challenged action

21  might be considered sound trial strategy."  *Id*.

22       Allen claims that his trial counsel was ineffective for failing to object to admission of autopsy

23  photographs (Exhibit 46) and crime scene photographs (Exhibits 45, 48).  *See* Amended Petition, pp.

24  12-13.

25       Allen, however, makes no showing that an objection to the admission of any of those

26  photographs would have been successful.  While Allen admitted to killing Laurel, and while he

27  admitted, generally, to the manner in which he did so, the question in dispute was whether the killing

28  was first or second degree murder, or voluntary manslaughter.  Allen's *mens rea* was at issue.  The

1   photographs of the crime scene and the autopsy photographs had a bearing upon the precise manner

2   in which Allen committed the murder, and upon his actions before and after the murder, and

3   therefore, were relevant to the issue of his *mens rea*.  The probative value of the crime-scene and

4   autopsy photographs outweighed any unfair prejudice that those photographs arguably could have

5   caused.  Counsel will not be deemed ineffective for failing to raise a meritless issue.  *See Lockhart v.*

6   *Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection

7   cannot constitute prejudice for purposes of a *Strickland* ineffective assistance of counsel claim).

8           Allen's trial counsel was not ineffective for failing to object to the admission into evidence of

9   the crime-scene and autopsy photographs.

10                          Ground 6B

11          In Ground 6B, Allen claims that his trial counsel "failed to properly present Allen's theory of

12   defense."  Amended Petition, p. 13.  Here, Allen claims that, when he was testifying about his belief

13   that his wife was having an affair, and about his willingness to return to their home and try to repair

14   their marriage if she would discontinue the affair, and the prosecutor objected to certain of that

15   testimony on hearsay grounds, his counsel did not do enough to attempt to overcome those

16   objections.  *See id*. at 13-14; *see also* Testimony of Robert Eugene Allen, Exhibit 18, pp. 49, 51, 61.

17          In fact, though, a review of  Allen's testimony, and the testimony of Herbert Brown, reveals

18   that Allen's counsel was successful in eliciting ample evidence to show that Allen strongly believed

19   that Laurel was cheating on him, in order to support his theory that Allen's killing of Laurel was in

20   the heat of passion.  *See* Testimony of Robert Eugene Allen, Exhibit 18, pp. 49-54, 59-66; 71-72;

21   *see also* Testimony of Herbert Brown, Exhibit 17, pp. 95-97, 99-100, 103-04.

22          Allen does not show, with any specificity, what further testimony he could have given, how

23   any such further testimony would have added support to his defense, or how it could possibly have

24   changed the outcome of his trial.

25          Ground 6B is meritless.

26                          Ground 6C

27          In Ground 6C, Allen claims that his trial counsel "failed to object to prosecutorial misconduct

28   during closing argument."  Amended Petition, p. 15.

1    First, Allen argues that his trial counsel was ineffective for not objecting to the following

2  argument made by the prosecutor in his closing argument:

3        Why?  Because the defendant suspected she was seeing another man.  He
         suspected, he didn't know it.  He had gotten -- Laurel had received some phone calls
4        that he didn't understand.  He questioned her about it.  He didn't believe her answers,
         but he had not one shred of proof that she was even cheating on him.
5

6  Transcript of Trial, Exhibit 18, p. 89; *see* Amended Petition, p. 15.  Allen does not make a cogent

7  argument, legally supported, that this argument was improper.  As Allen's *mens rea* was at issue, so

8  was his motivation for killing Laurel, and, therefore, so was the factual basis for his motivation -- the

9  events that led him to believe Laurel was cheating on him.  This was properly a subject of the

10  prosecution's argument, and that argument was not prosecutorial misconduct.  Allen's counsel was

11  not ineffective for not objecting to this argument.  Moreover, this argument plainly was not of such

12  gravity that a successful objection, if that were possible, could have affected the outcome of the trial.

13    Allen also argues that his counsel was ineffective for not objecting to the following

14  argument, which was made by the prosecutor in his closing argument:

15        And then there was this [notion] that toxins took over [his] head.  Where is the
         evidence?  Where is the testimony about toxins?  Where is the expert testimony about
16        someone being outside themselves?  It doesn't exist.

17  Transcript of Trial, Exhibit 19, p. 36; *see* Amended Petition, p. 15.  Allen argues that this was a

18  "clear example of burden shifting."  *Id*.  Actually, this was not a clear example of burden shifting.

19  The prosecutor did not state, or insinuate, that there was any burden of proof on the defense.  Rather,

20  the prosecutor asserted that an argument made by the defense was unsupported by evidence.  The

21  prosecutor's argument appears to have been proper.  *See United States v. Cabrera,* 201 F.3d 1243,

22  1250 (9th Cir.2000) ("A prosecutor's comment on a defendant's failure to call a witness does not

23  shift the burden of proof, and is therefore permissible, so long as the prosecutor does not violate the

24  defendant's Fifth Amendment rights by commenting on the defendant's failure to testify."); *United*

25  *States v. Vaandering*, 50 F.3d 696, 701-02 (9th Cir.1995) (same).  Moreover, even if this argument

26  by the prosecutor were considered somehow improper, the argument was not such that the outcome

27  of the trial might have been altered by a successful objection.

28    Ground 6C is without merit.

21

1          Ground 7

2          In Ground 7, Allen claims that he "is in custody in violation of his right to the effective

3   assistance of appellate counsel as guaranteed by the Sixth and Fourteenth Amendments to the United

4   States Constitution where appellate counsel failed to raise any issues regarding the voir dire."

5   Amended Petition, p. 16.  Allen's argument is that his appellate counsel was ineffective for failing to

6   raise, on his direct appeal, the claims stated in Grounds 3 and 4 of his federal habeas petition.  *Id*.

7          The Nevada Supreme Court held these claims of ineffective assistance of appellate counsel to

8   be procedurally barred in state court, because Allen's state habeas petition was filed outside the

9   applicable one-year limitations period.  *See* Order of Affirmance, Exhibit 67.  Respondents contend,

10  therefore, that this claim is barred by the procedural default doctrine.  *See* Answer, pp. 7-11; *see also*

11  Motion to Dismiss (ECF No. 42), pp. 4-6.  In turn, Allen argues that he can show cause for the

12  procedural default, in that he was unable to raise this claim within Nevada's one-year limitations

13  period because of his former counsel's failure to provide him files necessary to raise the claim, in

14  spite of his persistent and repeated requests for the files.  *See* Opposition to Motion to Dismiss, pp.

15  8-17.  And, Allen also argues that, because of the way that the state-law statute of limitations was

16  applied in his case, it was not adequate, such that it could support a procedural default.  *Id*. at 10-12,

17  14-15  Here again, the court assumes for purposes of analysis that Allen can show cause for his

18  procedural default, but finds that he cannot show prejudice with respect to Ground 7.  And, even if it

19  is assumed that the state-law statute of limitations was inadequate, as applied in this case, Allen is

20  not entitled to relief on Ground 7.  The court finds the claims in Ground 7 to be without merit.

21         As the Nevada Supreme Court has not ruled on the claims in Ground 7 of Allen's federal

22  habeas petition, this court considers those claims de novo.  *See Chaker*, 428 F.3d at 1221; *Lewis*, 391

23  F.3d at 996.

24         The court has determined, ruling on the claims de novo, that Grounds 3 and 4 are without

25  merit.  *See* discussion, *supra*, regarding Grounds 3 and 4.  Therefore, Ground 7 also fails.

26  Certificate of Appealability

27         The standard for issuance of a certificate of appealability calls for a "substantial showing

28  of the denial of a constitutional right."  28 U.S.C. § 2253(c).  The Supreme Court has interpreted

                                              22

1  28 U.S.C. § 2253(c) as follows:

2       Where a district court has rejected the constitutional claims on the merits, the
        showing required to satisfy §2253(c) is straightforward: The petitioner must
3       demonstrate that reasonable jurists would find the district court's assessment of the
        constitutional claims debatable or wrong.

4

5  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074,

6  1077-79 (9th Cir.2000).  The Supreme Court further illuminated the standard in *Miller-El v.*

7  *Cockrell*, 537 U.S. 322 (2003).  The Court stated in that case:

8       We do not require petitioner to prove, before the issuance of a COA, that some jurists
        would grant the petition for habeas corpus.  Indeed, a claim can be debatable even
9       though every jurist of reason might agree, after the COA has been granted and the
        case has received full consideration, that petitioner will not prevail.  As we stated in
10     Slack, "[w]here a district court has rejected the constitutional claims on the merits,
      the showing required to satisfy § 2253(c) is straightforward: The petitioner must
11     demonstrate that reasonable jurists would find the district court's assessment of the
      constitutional claims debatable or wrong."

12

13  *Miller-El*, 123 S.Ct. at 1040 (quoting *Slack*, 529 U.S. at 484).

14      The court has considered the issues raised by Allen, with respect to whether they satisfy the

15  standard for issuance of a certificate of appeal, and the court determines that a certificate of

16  appealability is warranted with respect to Ground 3.  The court will grant Allen a certificate of

17  appealability regarding that claim.  Regarding all other issues resolved in this order, the court

18  determines that a certificate of appealability is not warranted.

19      **IT IS THEREFORE ORDERED** that petitioner's Amended Petition for Writ of Habeas

20  Corpus (ECF No. 27) is **DENIED**.

21      **IT IS FURTHER ORDERED** that petitioner is granted a certificate of appealability with

22  respect to Ground 3 of his Amended Petition for Writ of Habeas Corpus (ECF No. 27); in all other

23  respects, petitioner is denied a certificate of appealability.

24      **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

25  Dated this 4th day of August, 2014.

26

27  _____

28  LARRY R. HICKS
    UNITED STATES DISTRICT JUDGE